United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RANDY PANKEY,                         Case No. C-06-03737 JCS

          Plaintiff,

      v.                                  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

CITY OF CONCORD, ET AL.,

          Defendants.
_____/

## I. INTRODUCTION

Plaintiff, Randy Pankey ("Plaintiff" or "Pankey"), filed his Complaint in this action on April 25, 2006, asserting civil rights claims under 42 U.S.C. § 1983 and state law arising out of his April 27, 2005 arrest. On February 26 and February 27, 2008, the Court conducted a non-jury trial in the above matter. The following claims were tried: (1) 42 U.S.C. § 1983 (false arrest, unreasonable search and seizure, excessive force, malicious prosecution, and substantive due process) against Defendants Nunn, Johnson, Nakayama, Zalec, and Finney; (2) 42 U.S.C. § 1983 (retaliation) against Defendant Nunn only; and (3) state law claims for false arrest, false imprisonment, battery, intentional infliction of emotional distress, and negligence against Defendants Nunn, Johnson, Nakayama, Zalec, and Finney (the "Officers"), and the City of Concord (the "City"). Pursuant to Federal Rule of Civil Procedure 52(a), the Court makes the following Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

Based on the facts stipulated to by the parties and the evidence found credible by the Court, the Court finds the following Facts:

1.  At all relevant times, the individual Defendants were employees of Defendant City of Concord, California, serving as Concord Police Officers.

2.  On the night of April 27, 2005, Plaintiff was arrested by Officers Nunn and Johnson for alleged violations of California Penal Code Sections 1203.2 (probation violation) and 647 (f) (disorderly conduct), and violation of Health and Safety Code Section 11550 (illegal use of controlled substance).

3.  Plaintiff was arrested at 3531 Thunderbird Drive in Concord, California. That residence is located across the street from Plaintiff's residence. Plaintiff resided at 3544 Thunderbird Drive, Concord, California. 3531 Thunderbird Drive is owned by Andrew Badger. On the night of the arrest, Plaintiff went to Andrew Badger's house at approximately 9:00 p.m. to socialize. Plaintiff was not an overnight guest at Badger's residence.

4.  Between 9:00 p.m. and the time of Officer Nunn's arrival at Badger's residence, at approximately 11:49 p.m., Badger consumed two or three beers and two "shots" of bourbon. During this time, Plaintiff consumed approximately two "shots" of bourbon and a few beers. Plaintiff was also under the influence of methamphetamine.

5.  At approximately 9 p.m., Officer Nunn was on patrol in a marked Concord Police Department patrol car near the Badger residence. He heard loud music emanating from the garage at that residence. As he drove by, Officer Nunn saw a male, later identified as Plaintiff, walk out of the garage into the driveway leading to the street and yell "Hey," and make other incomprehensible statements, simultaneously waving his arms in the direction of the officer. Officer Nunn made a U-turn to determine why Plaintiff sought his attention.

6.  The driveway at the Badger residence was unenclosed, completely visible from the sidewalk, contained no structures such as a fence or hedge separating it from the sidewalk, and did not have any "no trespassing" or similar signs advising members of the public to stay away. The garage door at the Badger residence was open when Officer Nunn approached.

7.  Officer Nunn walked up the driveway and approached the garage at the Badger residence. He saw Plaintiff go back into the garage and he heard Plaintiff yell, "Here he comes." Officer Nunn saw the garage door begin to close and then re-open. In flagging Officer Nunn down

2

and then entering the garage and leaving the door open, Plaintiff intended that Officer Nunn should follow him into the garage and was deliberately provoking a confrontation.

8.  From outside the garage, Officer Nunn observed Plaintiff and Badger inside. He also observed that Plaintiff's speech was rapid and that he was sweating profusely, even in the cold weather. Officer Nunn observed that Plaintiff was acting in an abnormally agitated manner, pacing the garage and shouting. Officer Nunn also observed that Plaintiff's eyes were abnormally dilated, and that he had a white foamy substance on his mouth. Officer Nunn is trained to recognize physical symptoms consistent with being under the influence of a central nervous system stimulant, and he concluded that Plaintiff's symptoms fit this description. He concluded that Plaintiff was under the influence of a controlled substance.

9.  Officer Nunn entered the garage and asked Plaintiff for his identification. Plaintiff refused and became confrontational, yelling and pacing, exhibiting additional behavior that was consistent with being under the influence of a central nervous system stimulant. Because there were no backup officers present, Officer Nunn instructed Plaintiff to sit down. Plaintiff refused and continued to pace and yell incoherently. Plaintiff did not sit down despite approximately five instructions to do so. Plaintiff continued to pace and at one point clenched his fists and moved towards Officer Nunn. Concerned for his safety, Officer Nunn drew his collapsible baton and ordered Plaintiff to sit down.

10. Officers Finney, Nakayama, Mughannam, Huth, and Nunn arrived on the scene. Plaintiff finally sat on the ground. Officer Nunn again asked Plaintiff several times for his identification. Plaintiff refused and began to rise to his feet. Officers Nunn and Johnson took hold of Plaintiff's arms, placed Plaintiff on the ground, and secured him with handcuffs. Plaintiff was arrested for violation of California Health and Safety Code Section 11550 (being under the influence of a controlled substance) and Penal Code Section 647 (f) (public intoxication). There is no credible evidence that excessive force was used when Plaintiff was arrested.

11. Plaintiff was transported to the Concord Police Department ("CPD"). A criminal history check at CPD revealed that Plaintiff was on probation for violation of California Health and Safety Code 11377 (unauthorized possession of a controlled substance). The terms of that probation

1  included: (1) shall consume no alcohol; (2) shall not possess or use controlled substances; (3) shall
2  submit his/her person, place of residence, storage locker, any personal property, and any vehicle
3  under his control to search and seizure by any peace officer at anytime of the day or night; and (4)
4  shall submit to drug and alcohol tests as directed by the Probation Officer.

5        12.     In order to preserve evidence, a blood draw was obtained from Plaintiff. Plaintiff
6  refused to submit to the blood draw, and actively resisted the Officers. Plaintiff was placed in a
7  WRAP device and the blood draw was taken. The blood draw was taken in a medically-approved
8  manner by David Brown, a registered nurse. Nurse Brown used a blood draw kit provided by the
9  Contra Costa County Crime Laboratory. Officers Zalec and Nakayama assisted Nurse Brown by
10 physically restraining Plaintiff while the blood sample was taken. There is no credible evidence that
11 excessive force was used to restrain Plaintiff during this procedure.

12       13.     Plaintiff's blood was tested by Monica Siegrist, a forensic toxicologist with the
13 Contra Costa County Sheriffs Department. Using reliable testing protocols, Ms. Siegrist tested the
14 blood samples obtained from Plaintiff on the night of his arrest. Those blood samples had a
15 methamphetamine level of .21 mcg/ml. This level of methamphetamine is consistent with acute
16 methamphetamine intoxication and psychosis.

17       14.     Following the blood draw, Plaintiff was transferred to the Contra Costa County
18 Detention Facility in Martinez. Plaintiff asserts that on the way to the detention facility, Officer
19 Nunn pulled over and proceeded to beat Plaintiff in the back of the patrol car, hitting him with such
20 violence that Plaintiff urinated on himself. Officer Nunn denied this allegation. The Court finds
21 that Plaintiff's allegations are not credible.

**III.   CREDIBILITY FINDINGS**

23       15.     Witness Badger did not give a credible account of Plaintiff's behavior or of the
24 events on the date of his arrest. Mr. Badger had been consuming alcohol for approximately three
25 hours leading up to the event, including two shots of bourbon and two or three beers. In addition,
26 despite acknowledging familiarity with methamphetamine and having seen people under the
27 influence of methamphetamine, Mr. Badger insisted that Plaintiff did not appear to be under the
28 influence of methamphetamine. This is directly contrary to the lab results in the case.

4

16. Plaintiff did not give a credible account of the events surrounding his arrest and detention. First, Plaintiff acknowledged that in the three hours leading up to his arrest he had had a few beers and a couple of shots of bourbon. Moreover, Plaintiff was under the influence of methamphetamine, as confirmed by laboratory results, to a degree which was consistent with acute intoxication and psychosis. As a result, Plaintiff's perceptions and memory of the events were not reliable. In addition, Plaintiff testified that he had never knowingly taken methamphetamine. However, on at least two occasions, Plaintiff tested positive for methamphetamine.

17. Witness Olts did not give a credible account of the events that she witnessed. She admitted on the stand that she had given a false report of domestic battery to the police in order to obtain payment of the hospital bills related to an injury she sustained when she struck the Plaintiff. Indeed, at that time, Ms. Olts was working for an attorney. In any event, Ms. Olts was not at the Badger residence when the police arrived.

18. There was no credible evidence that any of the material facts in any of the police reports in this matter filed by the Officers were false.

19. The testimony of the Officers, in particular Officers Nunn, Johnson, Zalec, and Finney, was credible and was supported by other evidence.

## IV. CONCLUSIONS OF LAW

### A. Claims under 42 U.S.C. § 1983

1. Section 1983 provides that:

> Every person who, under the color of any statute . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a claim under section 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of the law. *West v. Atkins*,

487 U.S. 42, 48 (1988). It is undisputed that the Defendant Officers were acting under color of the law. Thus, Plaintiff's claims turn on whether his constitutional rights were violated.

2. Plaintiff alleged Section 1983 claims under the First, Fourth, and Fourteenth Amendments. The following Fourth Amendment claims were tried against Officers Nunn, Nakayama, Finney, Johnson, and Zalec: false arrest, unreasonable search and seizure, excessive force, and malicious prosecution. A Fourteenth Amendment claim for violation of Plaintiff's substantive due process rights was tried against these same Officers. In addition, a claim for retaliation based on Plaintiff's exercise of his First Amendment rights was tried as to Officer Nunn only.

### 1. Fourth Amendment Claims

3. The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

4. Whether or not a search is permitted under the Fourth Amendment may depend upon where a person is at the time of the search, and in particular, whether the person has "a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). "Thus, an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder is not." *Id*. Driveways are only semi-private areas for the purposes of the Fourth Amendment; whether or not an individual has a reasonable expectation of privacy with respect to a driveway depends on the type of activity being conducted and the degree of visibility from the street. *United States v. Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975).

Pankey did not have a legitimate expectation of privacy as to the Badger residence driveway: the driveway was fully visible from the street and Pankey himself flagged down Officer Nunn. Under these circumstances, it was reasonable for Officer Nunn to stop his car and walk up the driveway to talk to Pankey. Nor did Pankey have a legitimate expectation of privacy as to Badger's

6

garage. Pankey was not an overnight guest. Rather, the evidence showed that Pankey was merely present in Badger's garage with Badger's consent. Accordingly, Pankey cannot assert a Fourth Amendment violation based on the Officers' entry onto Badger's driveway or into Badger's garage.

5. Where there is a legitimate expectation of privacy, a warrantless entry is per se unreasonable under the Fourth Amendment, subject to only a few exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One such exception is where an individual has voluntarily consented to the entry. *Id*. Under very limited circumstances, consent may be inferred from conduct. *See United States v. Gilbert*, 774 F.2d 962, 964 (9th Cir. 1985) (holding that where an individual who had been arrested requested that officers get her some clothing from her bedroom, in her mobile home that was some miles away, evidence of drug use found in her bedroom was admissible, even though no search warrant had been obtained, because request for officers to obtain clothing implied consent).

In this case, Plaintiff flagged Officer Nunn and led him to the garage, leaving the door open, with the intent of provoking a confrontation. From this conduct, it is clear that Plaintiff freely and voluntarily consented to Officer Nunn's entering the garage.

6. Another exception to the warrant requirement arises when warrantless entry is necessary to prevent injury to the occupants of a residence that is either ongoing or about to occur. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 405-06 (2006) (holding that where officers responded to complaints about a loud party, arrived to hear sounds from the house indicating that a fight was starting, and could see that a "fracas was starting in the kitchen," entry without a warrant to prevent further violence was objectively reasonable and therefore did not violate the Fourth Amendment). *But see Welsh v. Wisconsin*, 466 U.S. 740 (1984) (holding that warrantless entry to arrest individual suspected of driving under the influence of alcohol violated Fourth Amendment because the individual was not a threat to public safety and only exigency was need to preserve blood evidence).

Here, the Officers reasonably believed, based on Pankey's aggressive and irrational behavior and the visible signs that he was under the influence of a central nerve stimulant, that Pankey posed a danger to himself and others. Therefore, under *Brigham*, even if a warrant would otherwise have

7

been required to enter Badger's garage, the Officers did not violate the Fourth Amendment by entering Badger's garage without a warrant.

7. Under the Fourth Amendment, a warrantless arrest must be supported by probable cause. *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id*. (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

At the time of Pankey's arrest, Officer Nunn had probable cause to believe that Plaintiff was in violation of California Health and Welfare Code § 11550[1] based upon Plaintiff's irrational behavior, and his objective indicia of being under the influence of a central nerve stimulant. Therefore, Defendants did not violate Pankey's Fourth Amendment rights by arresting Pankey.

8. Requiring an individual to submit to a blood test constitutes a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). *Schmerber* requires that a warrantless compulsory blood test be supported by both probable cause and exigent circumstances. *Ellis v. City of San Diego*, 176 F.3d 1183, 1191 (9th Cir. 1999). The probable cause must relate to an offense of which the current state of the arrestee's blood will constitute evidence. *See United States v. Chapel*, 55 F.3d 1416, 1419 (9th Cir. 1995). Exigent circumstances arise where rapid dissipation of drugs or alcohol from the blood of the arrestee will make it impossible to obtain evidence of the offense if the blood is not drawn. *See Nelson v. City of Irvine*, 143 F.3d 1196, 1205 (9th Cir. 1998). While force may be used to extract a blood sample from a resistant suspect, *see Hammer v. Gross*, 932 F.2d 842, 845 (9th Cir. 1991), the search may be unreasonable and in violation of the Fourth Amendment if excessive force is employed. *See Ellis*, 176 F.3d at 1191.

---

[1] California Health and Welfare Code § 11550 provides, in relevant part, "[n]o person shall use, or be under the influence of any controlled substance [including amphetamine and methamphetamine] . . . except when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances. . . . Any person convicted of violating this subdivision is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days or more than one year in a county jail. CAL. HEALTH & SAFETY CODE § 11550(a).

As discussed above, Defendants had probable cause to believe that Plaintiff was in violation of California Health and Welfare Code § 11550, prohibiting methamphetamine use. Further, the methamphetamine level in his blood was dissipating quickly, creating exigent circumstances. Therefore, Defendants did not violate Plaintiff's Fourth Amendment rights by requiring him to submit to a blood test.

9. An individual's expectation of privacy under the Fourth Amendment may be diminished where the individual is subject to a probation order that includes a search condition. *See United States v. Knights*, 534 U.S. 112, 120-21 (2001). In particular, in *Knights*, the Supreme Court held that search of a probationer's house requires only reasonable suspicion. *Id.* Because Pankey was on probation at the time of the relevant events, and the terms of his probation included a search condition, only reasonable suspicion would have been required to enter Badger's driveway or garage, even assuming Pankey might otherwise have had a legitimate expectation of privacy as to either place. For the same reasons Defendants had probable cause to arrest Pankey (discussed above), their entry into the Badger garage was also supported by reasonable suspicion.

The Court further finds that under the reasoning of *United States v. Knights*, Plaintiff had a diminished expectation of privacy with respect to the blood draw because the terms of his probation expressly permitted alcohol and blood tests at the direction of his Probation officer

10. To determine whether excessive force was used to effect an arrest, in violation of the Fourth Amendment, the Court asks whether "under the circumstances, the arresting officers used an unreasonable amount of force" when taking the arrestee into custody. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). In *Graham v. Conor*, courts were instructed that in determining whether the amount of force used was reasonable, they should balance the nature and extent of the Fourth Amendment intrusion against: (1) the severity of the crime at issue; (2) whether the arrestee posed a danger to the officers or others; and (3) whether the arrestee was resisting arrest or attempting flight. 490 U.S. 386, 396. Reasonableness is to be judged objectively, from the perspective of a reasonable officer on the scene, and not on the basis of the subjective intentions of the arresting officer. *Id*.

9

Considering the circumstances of Plaintiff's arrest, and later, the circumstances under which Plaintiff's blood was drawn, the Court finds that no excessive force was used against Pankey by any of the Officers. Rather, the Officers' use of force was at all times reasonable under the circumstances.

11. Under the doctrine of qualified immunity, even if a constitutional violation occurred, governmental officials are immune if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Even assuming that Plaintiff had established either an absence of probable cause or that the Officers' use of force was unreasonable, the Court concludes that the Officers could reasonably have *believed* that they could enter Badger's garage without a warrant, that there was probable cause to arrest Pankey, and that the amount of force used was reasonable under the circumstances. Accordingly, the Officers are entitled to qualified immunity even if they violated Pankey's rights under the Fourth Amendment.

12. A malicious prosecution claim may arise from a violation of the Fourth Amendment. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004). The Ninth Circuit has held that claims of malicious prosecution are not cognizable under section 1983 if process is available within the state judicial system to provide a remedy. *Usher v. City of Los Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987). "However, an exception exists to the general rule when malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* A plaintiff alleging malicious prosecution under section 1983 must therefore establish: (1) the elements of the state law tort; and (2) an intent to deprive the plaintiff of a constitutional right. *See Madrigal v. California*, No. CV F 06-0595 AWI SMS, 2006 WL 3834284, *3 (E.D. Cal. Dec. 26, 2006).

In California, to prevail on a claim of malicious prosecution, a plaintiff must establish that the prior action was: (1) "commenced by or at the direction of the defendant and pursued to a legal termination in plaintiff's favor"; (2) "brought without probable cause"; and (3) "initiated with malice." *Sagonowksy v. More*, 75 Cal. Rptr. 2d 118, 128 (Cal. Ct. App. 1998). "[W]here police

10

officers do not act maliciously or with reckless disregard for the rights of an arrested person, they are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007). The presumption of prosecutorial independence may be rebutted by showing that the investigating officers presented the prosecutor with information known to be false. *Id.* "A police officer who maliciously or recklessly makes false reports to the prosecutor may be held liable for damages. . . ." *Id.*

Pankey's malicious prosecution claim fails for three reasons. First, as discussed above, the Court finds that the arrest was supported by probable cause and, therefore, the prosecution also was supported by probable cause. Second, the Court concludes that the offense reports did not contain any materially false information. To the extent the Officers' reports differed from the accounts of Andrew Badger, Plaintiff, or Olts, those accounts were not credible for the reasons stated above. Third, the evidence at trial showed that the Officers did not act maliciously or recklessly in making their reports. Therefore, the Court finds in favor of Defendants on this claim.

13. For the reasons stated above, the Court finds in favor of Defendants on all of Plaintiff's Section 1983 claims asserted under the Fourth Amendment.

### 2. Fourteenth Amendment Substantive Due Process Claim

14. The Fourteenth Amendment's substantive due process clause protects against the arbitrary or oppressive exercise of governmental power. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). "[T]he Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 128 (1992)) (internal quotation marks omitted). The cognizable level of executive abuse of power is that which "shocks the conscience" or "violates the decencies of civilized conduct." *Id.* at 846. Mere negligence or liability grounded in tort does not meet the threshold requirement to establish a substantive due process violation. *Id.* at 849.

Based on the evidence presented at trial, the Court concludes that Defendants' conduct does not shock the conscience and, therefore, the Court finds in favor of Defendants on this claim.

### 3. **First Amendment Retaliation Claim Against Officer Nunn**

15. To state a claim of retaliation under Section 1983, Plaintiff must establish two essential elements: (1) that his conduct was protected by the Constitution; and (2) that the protected conduct "was a substantial or motivating factor in any retaliatory acts taken by" the state actor Defendants. *Berry v. Atkins*, No. C 93-20473, 1995 WL 691869, at *3 (N.D. Cal. Nov. 15, 1995). In *Sorranno's Gasco, Inc. v. Morgan*, the Ninth Circuit found that the First Amendment protects the right to access the courts and petition the government for redress. 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510 (1972)). The Court further noted that the "[d]eliberate retaliation against an individual's exercise of this right is actionable under section 1983." *Id.* Therefore, Plaintiff's initiation of legal proceedings against the Concord Police Department constitutes constitutionally protected conduct.

Based on the evidence presented at trial, the Court does not find that Officer Nunn's conduct was motivated by Plaintiff's initiation of a lawsuit against the City of Concord. Therefore, the Court finds in favor of Defendants on this claim.

### B. **State Law Claims**

16. The Court tried state law claims for false arrest, false imprisonment, battery, intentional infliction of emotional distress, and negligence against Defendants Nunn, Johnson, Nakayama, Zalec, Finney, and the City of Concord.

17. Under California law, the existence of probable cause is a complete defense to claims of false arrest and false imprisonment. *See Hamilton v. City of San Diego*, 217 Cal. App. 3d 838, 843-44 (1990) (citing Cal. Penal Code § 847). Further, if the individual officers had probable cause, a public entity that employs the officer also is not liable for injury caused by the officer. Cal. Gov. Code § 815.2. For the reasons stated above, the Court finds that Pankey's arrest was supported by probable cause. Therefore, the Court finds in favor of Defendants with respect to plaintiff's claims for false arrest and false imprisonment.

18. Under California law, in order to prevail on a battery claim against a police officer, a plaintiff must establish that the force used was unreasonable. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272-74 (1998); Cal. Penal Code § 835a. For the reasons stated above, the Court

1  finds that the force used against Plaintiff was reasonable.  Further, because the individual Officers
2  are not liable for battery, neither can the City be held liable.  *See* Cal. Gov. Code § 815.2.
3  Therefore, the Court finds in favor of Defendants with respect to Plaintiff's battery claim.

4        19.    Under California law, to prevail on a claim of intentional infliction of emotional
5  distress, Plaintiff must establish: "1) extreme and outrageous conduct by the defendant with the
6  intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) the
7  plaintiff's suffering severe or extreme emotional distress; and 3) actual and proximate causation of
8  the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32
9  Cal. 3d 197, 209 (1982).  To be considered "outrageous," the Defendants' alleged conduct "must be
10  so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id.*

11  Based on the evidence presented at trial, the Court does not find Defendants' conduct to be
12  outrageous. Therefore, the Court finds in favor of Defendants with respect to Plaintiff's claim for
13  intentional infliction of emotional distress.

14        20.    To prevail on a claim for negligence, a plaintiff must establish: (1) a legal duty to use
15  due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach.  *Ladd*
16  *v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).  Plaintiff in this case has not established that
17  any legal duty owed to him by Defendants was breached.  Therefore, the Court finds in favor of
18  Defendants on Plaintiff's negligence claim.

19  Judgment shall be entered in favor of all Defendants and against Plaintiff on all claims.
20  IT IS SO ORDERED.

22  Date: March 24, 2008

23  _____
    JOSEPH C. SPERO
24  United States Magistrate Judge

13